**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Robert Edward LEBARRE, Appellant.**

Superior Court of Pennsylvania.

Argued June 11, 2008.
Filed Nov. 6, 2008.

---

**5.** Because the plain language of the statute is unambiguous, we need not address Appellant's public policy arguments.

Phillip D. Lauer, Easton, for appellant.

Richard D. Director, Asst. Dist. Atty., for Com., appellee.

BEFORE: FORD ELLIOTT, P.J., ALLEN and KELLY, JJ.

OPINION BY KELLY, J.:

¶ 1 This appeal is from the judgment of sentence entered in the Lehigh County Court of Common Pleas following Appellant's guilty plea to charges of homicide by vehicle while driving under the influence,[1] homicide by vehicle,[2] driving under the influence of alcohol,[3] and recklessly endangering another person.[4] Appellant contends that the trial court, pursuant to 18 Pa.C.S.A § 1106, may not award restitution to the estate of a decedent/victim for amounts owed by the estate as reimbursement to the Department of Public Welfare.[5] Because the estate stands in the shoes of the victim in such cases, we find that the award of restitution to the estate is permitted by the statute. Accordingly, we affirm.

¶ 2 The offenses to which Appellant pled stemmed from an incident on March 24, 2006, when he lost control of his vehicle and struck a tree. The impact caused injuries which resulted in the death of one of his passengers, Sheena Villa, who was in her first trimester of pregnancy.[6]

¶ 3 On February 2, 2007, Appellant entered an open guilty plea to the above offenses. Following a hearing on April 17, 2007, Appellant was sentenced to five to ten years' imprisonment for homicide by vehicle while driving under the influence of alcohol, homicide by vehicle, and driving under the influence of alcohol. He was also sentenced to six months to two years' imprisonment for the reckless endangerment charge, to be served consecutively to the homicide and DUI sentence for an aggregate sentence of five and a half to twelve years' imprisonment. Appellant was also ordered to pay restitution in the amount of $50,947, which, in addition to $3,000 for funeral expenses included the sum of $47,947, the amount of a lien for Medicaid payment for medical expenses attributable to treatment to be paid to the Department of Public Welfare (DPW). (N.T., Sentencing, 4/17/07, at 7–8).

¶ 4 Appellant did not object to any aspect of the sentence at the hearing, but filed a post-sentence motion for modification on April 26, 2007. In his motion, Appellant made two requests: (1) removal from the sentencing order of the restitution to DPW which was not a "proper recipient of restitution, and is not in the category of victims to whom restitution can be awarded in a criminal proceeding;" and (2) his placement at the State Correctional Institution at Chester, which "has a more advanced and intensive treatment program for [alcohol] addicted offenders." (Appellant's Post–Sentence Motions, filed 4/26/07). On June 25, 2007, the court

---

1. 75 Pa.C.S.A. § 3735(a).

2. 75 Pa.C.S.A. § 3732.

3. 75 Pa.C.S.A. § 3802.

4. 18 Pa.C.S.A. § 2705.

5. Appellant also asks us to review a challenge to the discretionary aspects of his sentence, but as we explain *infra,* that claim is waived.

6. A second passenger was also in the vehicle, but Appellant's claims on appeal are related only to Ms. Villa.

granted Appellant's request regarding the Chester facility, and on August 16th modified the restitution order so that Appellant was responsible for "restitution ... to the Estate of Sheena Villa for all payments made by the estate to the Department of Public Welfare." (Order, filed 8/16/07).[7] A timely appeal was filed to this Court.

¶ 5 Appellant's brief ostensibly raises four questions for this Court, however these implicate only two primary issues. First, Appellant challenges the discretionary aspects of his sentence, arguing that his was a "manifestly excessive sentence without appropriate reasons or rationale," and that the court considered "improper" factors.[8] (Appellant's Brief at 6). Second, he asserts it was error for the trial court to order restitution to the estate of Sheena Villa for the amounts it is to pay to the DPW. (*Id.*). We find that because Appellant did not raise his discretionary aspects claim below, it is waived. Further, we find that the trial court did not err in awarding restitution to the estate of the victim. Accordingly, we affirm.

¶ 6 Our standard of review in an appeal from the discretionary aspects of a sentence is well settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised

its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Hardy,* 939 A.2d 974, 980 (Pa.Super.2007) (citation omitted).

> [T]he right to appeal such an aspect of sentencing is not absolute and **is waived** if the appellant does not challenge it in post-sentence motions or by raising the claim during sentencing proceedings. To reach the merits of a discretionary sentencing issue, this Court will conduct a four-part analysis to determine:
>
> > (1) whether Appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether Appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the sentencing code.

*Commonwealth v. Bullock,* 948 A.2d 818, 825–26 (Pa.Super.2008) (emphasis added) (citation omitted).

¶ 7 Here, Appellant argues that the trial court abused its discretion when it sentenced him to five to ten years' imprisonment for his conviction of homicide by vehicle, DUI. Following his lengthy sentencing hearing, the trial court stated its many sentencing considerations on the record, and announced Appellant's sentence. The court then first asked Appellant if he understood the sentence, to which Appellant responded that he did, and whether he had any questions about the sentence, to which Appellant responded no. (N.T. Sen-

---

7. The original order specifying the amount of restitution, *per* the lien, directed that payment be made to the "Commonwealth of PA Dept. of Welfare." (Order of April 24, 2007). The amendatory order directing payment to the "Estate of Sheena Villa" made no alteration in the amount. (Order of August 16, 2007).

8. Appellant has also presented questions dealing specifically with whether his discretionary aspects challenge is waived by failure to raise it below, and whether he has raised a substantial question so as to allow appeal to this Court.

tencing, 4/17/07, at 128, 130–31). No concerns over the sentence or the factors on which the court relied were raised. Further, although Appellant filed a post-sentence motion to modify his sentence, it included only the challenge to restitution and a request to serve his time in a particular state institution. Appellant did not raise any discretionary aspects challenge at his sentencing hearing or in post-sentence motions; accordingly these issues are waived. Additionally, we note that the trial court amply discussed its reasons for the sentence in its Pa.R.A.P.1925(a) opinion; thus even if the issue were not waived, and Appellant was found to have raised a substantial question, we would affirm the sentence on the basis of that opinion. (*See* Trial Ct. Op., 1/15/08, at 7–12) (finding consideration of relevant factors warranted imposition of sentence twenty-four months beyond guidelines range).

█ ¶ 8 As to Appellant's restitution claim, "challenges to the appropriateness

of a sentence of restitution are generally considered challenges to the legality of the sentence." *Commonwealth v. Langston*, 904 A.2d 917, 921 (Pa.Super.2006). Restitution in this matter is compelled by 18 Pa.C.S.A § 1106, thus our task is one of statutory construction and "is a pure question of law, subject to plenary and *de novo* review." *Commonwealth v. Brown*, 956 A.2d 992 (Pa.Super.2008) (*en banc*). The sentencing code provides:

c) **Mandatory restitution.**—In addition to the alternatives set forth in subsection (a) of this section the court shall order the defendant to compensate the victim of his criminal conduct for the damage or injury that he sustained. For purposes of this subsection, the term "victim" shall be as defined in section 479.1 of the act of April 9, 1929 (P.L. 177, No. 175), known as The Administrative Code of 1929.[9]

18 Pa.C.S.A § 1106(c). "The ordering of restitution is further defined by 18 Pa.

**9.** This Administrative code section was repealed in 1998, and the current statutory definition of "victim" can be found at 18 P.S. § 11.103, which provides in relevant part:

"Victim." The term means the following:
(1) A direct victim.
(2) A parent or legal guardian of a child who is a direct victim, except when the parent or legal guardian of the child is the alleged offender.
(3) A minor child who is a material witness to any of the following crimes and offenses under 18 Pa.C.S. (relating to crimes and offenses) committed or attempted against a member of the child's family:
Chapter 25 (relating to criminal homicide).
Section 2702 (relating to aggravated assault).
Section 3121 (relating to rape).
(4) A family member of a homicide victim, including stepbrothers or stepsisters, stepchildren, stepparents or a fiance, one of whom is to be identified to receive communication as provided for in this act, except

where the family member is the alleged offender.
18 P.S. § 11.103. The statute further defines "direct victim:"
"Direct victim." An individual against whom a crime has been committed or attempted and who as a direct result of the criminal act or attempt suffers physical or mental injury, death or the loss of earnings under this act. The term shall not include the alleged offender. The term includes a resident of this Commonwealth against whom an act has been committed or attempted which otherwise would constitute a crime as defined in this act but for its occurrence in a location other than this Commonwealth and for which the individual would otherwise be compensated by the crime victim compensation program of the location where the act occurred but for the ineligibility of such program under the provisions of the Victims of Crime Act of 1984 (Public Law 98–473, 42 U.S.C. § 10601 et seq.).
*Id.*

C.S.A § 1106(a) [which] sets forth the general rule that upon conviction for any crime wherein the victim suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefore." *Langston, supra* at 922 (citations and quotation marks omitted). Restitution payments may be ordered to be paid directly to the victims of the relevant conduct and injury, or to "governmental [agencies which] have compensated the victim in a **monetary fashion** as a result of the loss of 'property [which] has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime, or wherein the victim suffered personal injury directly resulting from the crime.'" *Commonwealth v. Figueroa*, [456 Pa.Super. 620] 691 A.2d 487, 490 (Pa.Super.1997) (citing 18 Pa.C.S.A § 1106(a)) (emphasis added).

¶ 9 Here, Appellant argues that the order imposing restitution to be paid to the estate of Sheena Villa is not supported by any "appellate or statutory authority," positing that the cases relied upon by the trial court merely mention the payment of restitution paid to estates but offer no legal foundation. (Appellant's Brief at 22). Both the trial court and Appellant assert that this is an issue of first impression, and we agree. However, the well-settled legal fiction that an estate stands in the shoes of a decedent has been discussed in our law.

¶ 10 In *Freeze v. Donegal Mut. Ins. Co.*, 504 Pa. 218, 470 A.2d 958 (1983), our Supreme Court considered whether the estate of a deceased victim was entitled to recover under the Pennsylvania No–Fault Motor Vehicle Insurance Act. In *Freeze*, a minor child was struck and killed by an automobile. *Id.* at 960. The child's father was appointed administrator of the child's estate. *Id.* The child was insured under a no-fault auto insurance policy issued by Donegal Mutual Insurance Company, and the father applied to Donegal for payment of no-fault wage loss benefits. *Id.* Donegal argued that work loss benefits were only available to "survivors" of a deceased victim, and an estate was not a survivor within the meaning of the no-fault statute. *Id.* Donegal further asserted that the statutory language **"any victim or any survivor of a deceased victim** is entitled to recover basic loss benefits" limited recovery to actual victims and their survivors, and that the exclusion of decedent estates evinced a legislative intent to preclude estates from recovery. *Id.* at 961. The Court disagreed, and held that a decedent's estate could recover under the No Fault Act:

The appellant's argument, however, overlooks the very basic and fundamental fact that a person who dies as a result of injuries sustained in a motor vehicle accident is, within the meaning of the No-fault Act, a **victim.** That an injured victim is entitled to basic loss benefits under the Act is beyond question. The fact that a "victim" dies as a result of his injuries and becomes a "deceased victim", makes him no less a "victim" entitled to benefits under the provisions of the Act. **A personal representative in the person of the executor or administrator of his estate stands in the shoes of the deceased victim as far as entitlement to benefits is concerned.** The event of a victim's death activates the rights of statutory survivors to benefits under the Act. However, the activation of survivors' rights does not diminish or erase the victim's rights even though he now be a deceased victim. **If it was intended that a victim's right to benefits be extinguished at his death, the legislature could have and would have said so directly.**

*Id.* at 961 (emphasis added) (footnote omitted). Here, while the specific issue of whether an estate may stand in the shoes of a decedent for purposes of restitution may be novel, our answer to that question is compelled by *Freeze* as the language at issue here is the same, revolving around the definition of the word "victim." We can see no rational proscription against applying the reasoning in *Freeze* to the present case. Accordingly, we hold that because an estate stands in the shoes of the victim under the restitution statute, it is the "victim" within the meaning of that statute. *See id.*

¶ 11 The secondary question regarding restitution posed by Appellant is without merit. He argues that sub-section 1106(g) [10] provides that an award of restitution does not prevent the victim from pursuing additional civil remedies, and that any civil award must be reduced by the amount paid as restitution. (Appellant's Brief at 22). Thus, Appellant asserts, because sub-section 1106(g) operates to prevent double recovery, "the reverse should also be true." *Id.* He envisions a putative civil suit, positing that in any settlement agreement his insurance carrier would include amounts that would ultimately go towards DPW liens, arguing that "if credit is not given in the restitution order for any amount paid by [his] insurance carrier for obligation that the Estate ... has to DPW, then [he] is paying twice for the same damage to the victim, and in contravention of the intention of 18 Pa.C.S.A. § 1106(g)." (*Id.* at 23).

¶ 12 Appellant has provided no legal argument or citations to authority in support of this proposition and thus it is waived.

*See* Pa.R.A.P. 2119(b); *see also Commonwealth v. Thompson,* 939 A.2d 371, 376 (Pa.Super.2007). Moreover, any issues of double recovery may be addressed only when and if a civil award or settlement is sought and received. At that time, Appellant may invoke sub-section 1106(g) to ensure that his "civil award shall be reduced by the amount paid under the criminal judgment," 18 Pa.C.S.A. § 1106(g), since the statute "clearly provides that [Appellant] is entitled to an offset in a **subsequently** entered civil judgment for the amount of restitution ordered as part of the sentence in the criminal proceeding." *L.B. Foster Co. v. Charles Caracciolo Steel & Metal Yard, Inc.,* 777 A.2d 1090, 1095 (Pa.Super.2001) (emphasis added). At best, the argument is premature, and would warrant no further analysis even if it were not waived.

¶ 13 Judgment of sentence affirmed.

---

10. This sub-section provides:
   (g) **Preservation of private remedies.**—No judgment or order of restitution shall debar the owner of the property or the victim who sustained personal injury, by appropriate action, to recover from the offender as otherwise provided by law, provided that any civil award shall be reduced by the amount paid under the criminal judgment.
   18  Pa.C.S.A. § 1106(g).