J-S22022-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN JAMES SUCCI | : | |
| | : | |
| Appellant | : | No. 229 EDA 2022 |

Appeal from the PCRA Order Entered January 3, 2022
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0002732-2014

BEFORE: BOWES, J., McCAFFERY, J., and SULLIVAN, J.

MEMORANDUM BY McCAFFERY, J.: **FILED FEBRUARY 28, 2023**

John James Succi (Appellant) appeals *pro se* from the order entered in the Bucks County Court of Common Pleas dismissing his "Motion to Vacate Restitution/Sentencing," which the trial court treated as an untimely petition filed pursuant to the Post Conviction Relief Act (PCRA).[1] Appellant insists the trial court erred and violated his due process rights when it ordered restitution five months after sentencing, without conducting a hearing. Although we conclude the trial court improperly construed Appellant's motion to be an untimely PCRA petition, we, nevertheless, determine Appellant is entitled to no relief. Accordingly, we affirm the order on appeal.

---

[1] 42 Pa.C.S. §§ 9541-9546.

In a prior appeal, a panel of this Court summarized the facts leading to the underlying convictions follows:

> Appellant was a residential and commercial contractor. Beginning in 2005 and continuing through 2013, Appellant entered into thirteen contracts to build, remodel, or construct additions on certain properties located in Bucks County, Pennsylvania, Philadelphia County, Pennsylvania, and Margate, New Jersey. In each instance, Appellant either failed to finish the work, failed to obtain necessary permits, failed to perform under the contract, claimed he was insured when he was not, or provided fraudulent receipts. It was also typical for Appellant to quote a price for a particular project and then increase the costs. If the homeowner challenged Appellant's work practices, he threatened them with legal proceedings that would financially cripple the homeowners. In at least two instances, Appellant placed mechanic's liens on homeowners' properties.

*Commonwealth v. Succi*, 480 EDA 2015 (unpub. memo. at 1-2) (Pa. Super. Jan. 5, 2017).[2]

In February of 2014, Appellant was charged at two dockets with multiple counts of home improvement fraud, theft by deception, and deceptive business practices, and one count of insurance fraud.[3] The dockets were

_____

[2] The January 5, 2017, decision remanded Appellant's direct appeal to the trial court and retained panel jurisdiction, after the notes of testimony from Appellant's jury trial were supplemented into the record. *See Succi*, 480 EDA 2015 (unpub. memo. at 6). The subsequent published opinion of this Court affirming Appellant's judgment of sentence includes a detailed summary of the testimony presented at Appellant's jury trial. *See Commonwealth v. Succi*, 173 A.3d 269, 272-78 (Pa. Super. 2017), *appeal denied*, 17 MAL 2018 (Pa. July 3, 2018).

[3] 73 P.S. § 517.8(a)(2), 18 Pa.C.S. §§ 3922(a)(1), 4107(a)(2), and 4117(b)(4), respectively. Herein, Appellant has only appealed from his sentence at trial docket CP-09-CR-0002732-2014, where the majority of the
*(Footnote Continued Next Page)*

consolidated for a jury trial, and on December 12, 2014, Appellant was convicted of 12 counts each of deceptive business practices and theft by deception, two counts of home improvement fraud, and one count of insurance fraud. He was represented by Marc S. Stolee, Esquire.

Appellant proceeded to sentencing on January 16, 2015. At the beginning of the sentencing hearing, the trial court noted that the parties "had an opportunity to conference this matter" and there were "a number of legal issues that were raised[.]" N.T., 1/16/15, at 2. After discussing a correction to the sentencing guidelines ranges, the following exchange took place:

> THE COURT: All right. Now there was a second issue regarding . . . restitution. I will start with [Attorney] Stolee. You are challenging the calculation as done by the District Attorney?
>
> [Attorney Stolee]: Yes, Your Honor. We believe that restitution should be calculated as the dollar amount to complete the project. Either the dollar amount should be the total contract price or the amount to complete the project. Right now we don't have any evidence showing how much it had actually cost to complete, but was anticipated. We know what they paid. We don't know what was actually – what the cost would have been to complete it as originally contracted by [Appellant].
>
> I believe the Commonwealth is trying to calculate it as the cost – the amount that's paid, plus the amount that they – the additional amount that was spent less the original contract, and I believe that . . . they can overinflate the amount of restitution required to be paid by [Appellant].

---

charges were filed. *See* Appellant's Notice of Appeal, 1/27/22. At trial docket CP-09-CR-0005704-2014, Appellant was convicted of one count each of deceptive business practices, theft by deception, and insurance fraud. Because Appellant did not file a notice of appeal listing this docket number, this sentence, and restitution order, are not before us.

THE COURT: All right. [Commonwealth's attorney].

[Commonwealth's attorney]: Judge, I have broken down the restitution on a form, which I will mark. The way that the restitution was calculated by the Commonwealth is how much the victims paid in excess either to [Appellant] and/or another contractor in excess of what the original contract with [Appellant] was for the work provided, and that's how I calculated the restitution amounts.

THE COURT: All right. **I rule in favor of the Commonwealth.** I believe that part of the fraudulent conduct engaged by [Appellant] was that [he] underbid, knowingly gave these homeowners a cost that he knew the project could not be completed by. So to take the contract as he formed it would make part of the fraud part of a restitution calculation and that I will not do, and so I will follow the calculation as completed by the District Attorney's Office. I believe that is the most complete way of calculating actual out-of-pocket loss of the individuals involved in this case. . . .

*Id.* at 3-5 (emphasis added). Attorney Stolee did not object further to the court's ruling, or request the Commonwealth provide more support for its restitution calculations.

The sentencing hearing proceeded with victim impact testimony presented by the Commonwealth, and character evidence presented by Appellant. Attorney Stolee requested the trial court consider the fact that Appellant was a "first-time offender" and "lost everything" as a result of the charges. N.T. at 53. Counsel further acknowledged: "[Appellant] is aware of the restitution . . . and he will at some point need to address that when he gets out of jail, and we would like that to be as soon as possible." *Id.* at 54.

Thereafter, the trial court sentenced Appellant to an aggregate term of 15 to 30 years' imprisonment, imposing consecutive sentences with respect to each victim. After announcing the sentence for each criminal conviction,

the court imposed restitution, as requested by the Commonwealth. *See* N.T. at 73. The court admitted Commonwealth's Sentencing Exhibits 4, 5, and 6, which listed each victim's name and the amount of restitution requested. *See id.* at Exhibits CS-4, CS-5, CS-6.[4] The trial court then made the following comments:

> THE COURT: All right. Based on the objection being preserved to the calculation of the restitution, I ruled in favor of the District Attorney's Office.
>
> I would also note for the record that the sentence I imposed and my ruling as to restitution, I find the restitution is a non-issue in this case as far as I am concerned. It is very clear based on [Appellant's] bankruptcy, his removal and dissipation of assets, that restitution is not a real possibility to these people. I wish I could say it was, but I do not believe restitution is a possibility.
>
> If I thought there was any chance of attempting to correct the damage that was done by having [Appellant] pay restitution, I would have entered a different sentence, but I don't believe that that will ever occur and you will never see a dime of the money that he has taken from you. . . .

N.T. at 73-74.

As the trial court was informing Appellant of his post-sentence and direct appeal rights, Attorney Stolee asked if Appellant was eligible for the Recidivism Risk Reduction Incentive (RRRI) Program.[5] *See* N.T. at 75. The

---

[4] Exhibits CS-4 and CS-5 detail the breakdown of restitution for the victims at Docket CP-09-CR-0002732-2014, which totaled $1,578,927.98. *See* Exhibits CS-4 and CS-5. Exhibit CS-6 requested restitution in the amount of $58,225.00 for the victim at Docket CP-09-CR-0005704-2014. *See* Exhibit CS-6. Thus, the total amount of restitution was $1,637,152.98.

[5] *See* 61 Pa.C.S. §§ 4501-4512.

Commonwealth's attorney responded, "I think he might be," but indicted they did not "know what the minimum" was. *Id.* at 75-76. The court directed the Commonwealth to obtain that information, and stated it would "make that part of the sentencing sheet." *Id.* at 76. Thereafter, on May 20, 2015, the trial court entered an order stating that "upon agreement" of the parties, Appellant was an eligible offender pursuant to the RRRI program; the order also listed the appropriate RRRI minimum sentence for each offense. *See* Order, 5/20/15.

Meanwhile, Appellant filed a direct appeal to this Court on February 17, 2015. He argued: (1) several convictions were barred by the statute of limitations; (2) jurisdiction and venue in the Bucks County Court of Common Pleas was improper; and (3) the "life sentence" imposed by the trial court was unconstitutional and illegal.[6] *See Succi*, 173 A.3d at 279. As noted *supra*, this Court affirmed the judgment of sentence, and the Pennsylvania Supreme Court denied *allocatur* review on July 13, 2018. *See Succi*, 17 MAL 2018.

Thereafter, Appellant filed a counseled, timely PCRA petition, asserting trial counsel's ineffectiveness for failing to file a motion to dismiss or transfer the cases arising in Philadelphia and New Jersey, and failing to file a post-sentence motion challenging the discretionary aspects of his sentence. *See* Appellant's Petition for Relief Under the Post-Conviction Relief Act, 7/2/19, at

---

[6] Appellant was 59 years old at the time of the sentencing hearing, and suffered from several medical conditions. *See* N.T. at 52.

4. The court denied the petition without a hearing on April 14, 2020, and following a *nunc pro tunc* appeal, this Court affirmed the order denying relief. ***See Commonwealth v. Succi***, 1935 & 1936 EDA 2020 (Pa. Super. Jun. 4, 2021). Appellant petitioned the Pennsylvania Supreme Court for *allocatur* review on June 11, 2021.

In the meantime, on June 9, 2021, the Commonwealth filed a motion to modify restitution in the trial court. It explained that Appellant was directed to pay $41,950.00 to victim Erika Baratz, but she had died in February of 2020. ***See*** Commonwealth's Motion to Modify Restitution, 6/9/21, at 1-2 (unpaginated). Therefore, the Commonwealth requested that the court amend the restitution order to reflect that Baratz's restitution was to be paid to her daughter, Annette Goldstein. ***See id.*** at 2 (unpaginated). Appellant filed a *pro se* answer in opposition to the Commonwealth's motion, arguing the trial court did not impose restitution at the time of his sentencing, but rather, without conducting a hearing, modified the sentence five months later to add restitution. ***See*** Appellant's Answer in Opposition to Modify Restitution, 7/14/21, at 2 (unpaginated). On July 21, 2021, the trial court granted the Commonwealth's motion to amend the restitution order. ***See*** Order, 7/21/21. The court noted: "18 [Pa.C.S.] § 1106 does not require a hearing to amend

the order of restitution in this manner. ***Commonwealth v. Biauce***, 162 A.3d 1133, 1139 (Pa. Super. 2017)."[7] ***Id.***

Thereafter, on September 3, 2021, while his petition for allowance of appeal from the order denying his first PCRA petition was pending in the Supreme Court, Appellant filed the underlying *pro se* motion to vacate his restitution/sentencing in the trial court. ***See*** Appellant's Motion to Vacate Restitution/Sentencing Pursuant to 1106-C-2, 9/3/21. Relying on the trial court's comments at sentencing that it found restitution to be "a non-issue in this case," Appellant insisted that the court did not impose restitution at the time of his sentencing hearing as required by 18 Pa.C.S. § 1106. ***Id.*** at 1-2. Rather, he maintained the court modified the sentence five months later, on May 20, 2015, to include restitution without conducting a hearing. ***See id.*** at 2. Accordingly, Appellant argued the restitution order was "ipso facto illegal" pursuant to Section 1106. ***Id.*** at 4.

The Commonwealth filed an answer, asserting that the restitution amounts for each victim "were ordered" at the time of sentencing, and the amended order entered on May 20, 2015, only specified the RRRI minimum sentences. ***See*** Commonwealth's Answer to Appellant's Motion to Vacate Restitution/Sentencing, 11/1/21, at 2 (unpaginated). Appellant filed a Reply in response to the Commonwealth's answer. In the meantime, on December

---

[7] As we will discuss *infra*, Section 1106 of the Crimes Code outlines the parameters and requirements for an order of restitution for injuries to a person or property. ***See*** 18 Pa.C.S. § 1106.

30, 2021, the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal from his first PCRA petition. *See Commonwealth v. Succi*, 344 & 345 MAL 2021 (Pa. Nov. 30, 2021).

On January 3, 2021, the trial court entered an order denying Appellant relief. The court explained that it considered Appellant's motion to be a second, untimely PCRA petition, and it had no jurisdiction to address Appellant's claim. *See* Order, 1/3/21. This timely appeal follows.[8]

Preliminarily, we note that on March 16, 2022, this Court issued Appellant a rule to show cause why his present PCRA petition should not be quashed as premature because it was filed while the denial of his prior petition was pending in the Pennsylvania Supreme Court. *See* Show Cause Order, 3/16/22, *citing* *Commonwealth v. Lark*, 746 A.2d 585, 588 (Pa. 2000) (petitioner is precluded from filing subsequent PCRA petition until review of prior petition is resolved "by the highest state court in which review is sought, or upon expiration of the time for seeking such review"). Appellant filed a response, essentially arguing the trial court permitted him to proceed. *See* Appellant's Response, 3/25/22, at 3-4. We discharged the show cause order on April 4, 2022, but stated that the issue would be referred to the merits panel.

---

[8] Appellant filed a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal with his notice of appeal.

In its brief, the Commonwealth suggests that the trial court erred when it treated Appellant's motion as a PCRA petition. **See** Commonwealth's Brief at 17-19. However, it maintains the order denying relief was, nevertheless, proper. **Id.** at 20-22. We agree.

Restitution is governed by Section 1106 of the Crimes Code. Section 1106(c)(1) mandates that a trial court "shall order full restitution [r]egardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss." 18 Pa.C.S. § 1106(c)(1)(i). The statute further requires that the court "specify the amount and method of restitution" at the time of sentencing. 18 Pa.C.S. § 1106(c)(2). Relevant herein, Section 1106(c)(3) provides:

> The court may, **at any time** . . . alter or amend any order of restitution made pursuant to paragraph (2), provided, however, that the court states its reasons and conclusions as a matter of record for any change or amendment to any previous order.

18 Pa.C.S. § 1106(c)(3) (emphasis added).

Relying on the language of Section 1106(c)(3), this Court has held that a defendant may seek "a modification or amendment of [a] restitution order at any time directly from the trial court." **Commonwealth v. Stradley**, 50 A.3d 769, 772 (Pa. Super. 2012). Moreover, because the relief is statutorily based on Section 1106, a defendant is not required to seek relief pursuant to the PCRA, and, accordingly, is not constrained by the PCRA's time for filing requirements. **See id.**, citing **Commonwealth v. Mitsdarfer**, 837 A.2d 1203

(Pa. Super. 2003). Thus, we conclude the trial court erred when it construed Appellant's motion to be an untimely PCRA petition.

Nevertheless, as the Commonwealth emphasizes in its brief, we may affirm the decision of a trial court on any basis if the ruling is correct. *See* Commonwealth's Brief at 19; *see also Commonwealth v. Reese*, 31 A.3d 708, 727 (Pa. Super. 2011) (*en banc*). Because we conclude Appellant is entitled to no relief, we affirm the order on appeal.

The crux of Appellant's claim is that the trial court did not impose restitution at the time of his sentencing as required by Section 1106(c)(2). *See* Appellant's Brief at 12-13. Rather, Appellant maintains the trial court added an "overblown, outrageous amount of restitution" five months later, without scheduling a hearing or even informing him that it did so. *See id.* at 13 (emphasis omitted). Appellant claims that he was first notified of the restitution order seven years later when the Commonwealth filed its motion to modify restitution in June of 2021. *See id.* Thus, he argues he was deprived of due process and the opportunity to "bring in his own expert to assess whether the costs should be less." *Id.* at 14, 17 (emphasis omitted). Appellant relies primarily on the trial court's statement at his sentencing hearing that it imposed the lengthy prison sentence because it believed restitution was a "non[-]issue" and "not a [r]eal possibility." *Id.* at 20, *citing* N.T. at 74. He insists the restitution amounts were never "summarized at the time of [s]entencing," and, in fact, the court "unequivocally [r]uled that

restitution was not a condition of the sentence imposed[.]" Appellant's Brief at 38-39.

Appellant's argument is based on a misapprehension of the trial court's comments at his sentencing hearing. After announcing the prison terms imposed for the crimes against each victim, the trial court admitted the Commonwealth's sentencing exhibits, which detailed the restitution requested for each victim. *See* N.T. at 73. The court stated: "Based on the objection being preserved to the calculation of the restitution, I ruled in favor of the [Commonwealth]." *Id. See also id.* at 3-5. As Attorney Stolee expressed during the hearing, Appellant was "aware of the restitution, [and that] he will at some point need to address that when he gets out of jail[.]" *Id.* at 54. The court's subsequent comments, upon which Appellant relies, simply reflected the court's doubt that Appellant will ever be in a position to pay restitution to the victims. *See id.* at 74. The court noted that if it believed Appellant could repay the victims, it "would have entered a different sentence[,]" presumably with a shorter prison term. *See id.* Therefore, Appellant's claim that the court did not impose restitution at the time of his sentencing hearing is simply incorrect.

Moreover, the May 20, 2015, order — which Appellant claims the court, belatedly and without conducting a hearing, added restitution to his sentence — makes no mention of any restitution amounts. Rather, that order outlines the RRRI minimum sentences for each of Appellant's prison terms. *See* Order, 5/20/15. Accordingly, Appellant's contention that the trial court failed to

follow the dictates of Section 1106 when it imposed restitution in his case is meritless.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/28/2023